PILLSBURY WINTHROP SHAW PITTMAN LLP
DAVID G. KEYKO (*Pro Hac Vice*)
JOHN M. GRENFELL (88500)
G. ALLEN BRANDT (264935)
Four Embarcadero Center, 22nd Floor
Post Office Box 2824
San Francisco, CA 94126-2824
Telephone: (415) 983-1000
Facsimile No.: (415) 983-1200
email: john.grenfell@pillsburylaw.com
        allen.brandt@pillsburylaw.com
        david.keyko@pillsburylaw.com

{Additional Counsel Listed Herein}

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | Bankr. Case. No. 11-31376 DM |
| | ) | |
| HOWREY LLP, | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | **LAW FIRM DEFENDANTS' JOINT** |
| | ) | **REPLY IN SUPPORT OF MOTION** |
| | ) | **TO DISMISS** |
| | ) | |
| | ) | |
| ALLAN B. DIAMOND, Chapter 11 Trustee | ) | Adv. Proc. No. 13-03094 |
| for Howrey LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| HOGAN LOVELLS US LLP, | ) | |
| | ) | |
| Defendant. | | |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 11 Trustee for Howrey LLP, | ) Adv. Proc. No. 13-03060 |
| Plaintiff, | ) |
| v. | ) |
| KASOWITZ BENSON TORRES & FRIEDMAN LLP, | ) |
| Defendant. | ) |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 11 Trustee for Howrey LLP, | ) Adv. Proc. No. 13-03057 |
| Plaintiff, | ) |
| v. | ) |
| NEAL, GERBER & EISENBERG LLP, | ) |
| Defendant. | ) |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 11 Trustee for Howrey LLP, | ) Adv. Proc. No. 14-03032 |
| Plaintiff, | ) |
| v. | ) |
| PERKINS COIE LLP, | ) |
| Defendants. | ) |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 11 Trustee for Howrey LLP, | ) Adv. Proc. No. 13-03095 |
| Plaintiff, | ) |
| v. | ) |
| PILLSBURY WINTHROP SHAW PITTMAN LLP, JEFFREY GANS, MELISSA LESMES, and MICHAEL MCNAMARA, | ) |
| Defendants. | ) |

| | |
|---|---|
| ALLAN B. DIAMOND, Chapter 11 Trustee for Howrey LLP, | ) Adv. Proc. No. 13-03254 |
| Plaintiff, | ) |
| v. | ) |
| SEYFARTH SHAW LLP, | ) |
| Defendant. | ) |

|   |   |   |
|---|---|---|
| 1 | ALLAN B. DIAMOND, Chapter 11 Trustee | ) Adv. Proc. No. 13-03062 |
| 2 | For Howrey LLP, | ) |
|   | | ) |
| 3 | Plaintiff, | ) |
|   | | ) |
| 4 | v. | ) |
|   | | ) |
| 5 | SHEPPARD MULLIN RICHTER & | ) |
|   | HAMPTON LLP, | ) |
| 6 | | ) |
| 7 | Defendant. | ) |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

| | | Page |
|---|---|---|

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.    *HELLER* AND *COUDERT* MAKE CLEAR THAT ALL THE TRUSTEE'S
      CLAIMS FAIL AS A MATTER OF LAW ........................................................... 2

    A.   The *Jewel* Doctrine Does Not Apply Here ........................................... 3

    B.   Equity and Public Policy Also Compel Dismissal ............................... 7

    C.   The Trustee's Attempts to Evade *Heller* Are Unavailing.................... 8

II.   THE TRUSTEE'S 11 U.S.C. § 542 CLAIMS FAIL AS A MATTER OF
      LAW ................................................................................................................ 11

III.  THE TRUSTEE'S EQUITABLE ACCOUNTING CLAIM SHOULD BE
      DISMISSED .................................................................................................... 13

IV.   THE TRUSTEE FAILS TO STATE A CLAIM FOR UNJUST
      ENRICHMENT ............................................................................................... 15

    A.   Law Firm Defendants Have Not Received and Howrey Property or
             Benefit .................................................................................................. 15

    B.   Law Firm Defendants' Retention of the Profits From Their Work is Not
             Unjust or Inequitable ........................................................................... 18

CONCLUSION......................................................................................................... 19

Case: 13-03095    Doc# 98    Filed: 07/16/14    Entered: 07/16/14 20:53:23    Page 4 of
28

LAW FIRM DEFENDANTS' JOINT REPLY
IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*United States v. Alexander,*
106 F.3d 874 (9th Cir. 1997) ........................................................ 9, 12

*Avianca, Inc. v. Corriea,*
1992 U.S. Dist. LEXIS 4709 (D. D.C. Apr. 13, 1992) ........................ 14

*Bates v. Northwestern Human Services, Inc.,*
466 F. Supp 2d 69 (D. D.C. 2006) .......................................... 15, 17

*Beckman v. Farmer,*
579 A.2d 618 (D.C. 1990) ........................................................ 6, 8

*United States v. Bertoli,*
994 F.2d 1002 (3d Cir. 1993) ...................................................... 11

*Cobell v. Babbitt,*
30 F. Supp 2d 24 (D. D.C. 1988) ................................................ 15

*Convit v. Wilson,*
980 A. 2d 1104 (D. D.C. 2009)................................................... 14

*Dev. Specialists, Inc. v Akin Gump Strauss Hauer & Feld LLP,*
480 B.R. 145 (S.D.N.Y 2012) .............................................. 12, 14

*In re Gurga,*
176 B.R. 196 (B.A.P, 9th Cir. 1994)........................................... 13

*In re Hatfield,*
No. 08-3140, 2009 WL 2849538 (Bankr. N.D. Cal. Jul. 17, 2009)............ 19

*Haynes v. Navy Fed. Credit Union,*
-- F. Supp. 2d --, 2014 WL 2591371 (D.D.C. Jun. 10, 2014)................ 15, 16

*Heller Ehrman LLP v. Jones Day,*
-- B.R.--, 2014 WL 2609743 (N.D. Cal. June 11, 2014)...................... *passim*

*Heller Ehrman v. Gregory Canyon, Ltd. (In re Heller Ehrman),*
461 B.R. 606 (Bankr. N.D. Cal. 2011)......................................... 13

*In re Hill,*
440 B.R. 176 (Bankr. S.D. Cal. 2010) ........................................ 9

*Jewel v. Boxer,*
156 Cal. App. 3d 171 (1984) ..................................................... *passim*

- ii -

*In re Lazar*,
    237 F.3d 967 (9th Cir. 2001) ..................................................................... 19

*Life Ins. Co. of Va. v. Barakat (In re Barakat)*,
    173 B.R. 672 (Bankr. C.D. Cal. 1994) .......................................................... 9

*In re Linda Vista Cinemas, L.L.C.*,
    442 B.R. 724 (Bankr. D. Ariz. 2010) ............................................................ 8

*In re Lorazepam & Clorasepate Antitrust Litig.*,
    295 F. Supp. 2d 30 (D.D.C. 2003) ............................................................. 17

*Neuman v. Akman*,
    715 A.2d 127 (D.C. 1998) ........................................................................... 9

*In re Pac. Gas & Elec. Co.*,
    279 B.R. 561 (Bankr. N.D. Cal. 2002) ........................................................ 19

*Qatar Nat'l Bank v. Winmar, Inc.*,
    650 F. Supp.2d 1 (D.D.C. 2009) ................................................................. 18

*Rapaport v. U.S. Dept. of Treasury, Office of Thrift Supervision*,
    59 F.3d 212 (D.C. Cir. 1995) ...................................................................... 16

*RBS Citzens, N.A. v. Bentley Motors, Inc.*
    No. 10 C 2929, 2012 WL 1565457 (N.D. Ill., May 2, 2012) ........................ 17

*In re Robert W. Mance, III*,
    980 A.2d 1196 (D.C. 2009) .................................................................... 9, 16

*Robinson v. Nussbaum*,
    11 F. Supp. 2d 1 (D.D.C. 1997) ........................................................ 6, 8, 14

*In re Romano*,
    350 B.R. 276 (Bankr. E.D. La.2005) ............................................................ 8

*Rosenak v. Poller*,
    290 F.2d 748 (D.C. Cir. 1961) .................................................................... 15

*Security Farms v. International Brotherhood of Teamsters*,
    124 F.3d 999 (9th Cir. 1997) ...................................................................... 19

*State Compensation Ins. Fund v. Zamora (In re Silverman)*,
    616 F.3d 1001 (9th Cir. 2010) ...................................................................... 8

*State Farm Gen. Ins. Co. v. Stewart*,
    681 N.E.2d 625 (Ill. App. Ct 1997).............................................................. 17

*In re Thelen LLP*,
    -- N.E.3d --, 2014 WL 2931526 (N.Y. Jul. 1, 2014) ............................ *passim*

- iii -

Case: 13-03095    Doc# 98    Filed: 07/16/14    Entered: 07/16/14 20:52:23    Page 6 of 28

*In re Thelen, LLP (Geron v. Seyfarth Shaw LLP)*,
   736 F.3d 213 (2d. Cir 2013) ......................................................................... 14

*Warren v. Chapman*,
   535 A. 2d 856 (D.C. Cir. 1987) ................................................................... 15

*Young v. Delaney*,
   647 A.2d 784 (D.C. 1994) ......................................................................... 6, 8

<u>Statutes and Codes</u>

United States Code
   Title 11, section 542 .............................................................................. *passim*
   Title 28, section 1334(c)(1) ........................................................................ 19
   Title 28, section 1452(b)............................................................................ 19

Code of the District of Columbia
   Section 33-104.04(b)(1) ............................................................................... 7
   Sections 33-104.04(b)(1) and 106.03(b)(3) ................................................. 14
   Section 33-106.03(b)(3) ............................................................................... 6

<u>Other Authorities</u>

R. Epstein, *In Defense of the Contract at Will*, 51 U. CHI. L. REV. 947, 951
   (1984) ........................................................................................................ 10

- iv -

Law Firm Defendants jointly submit this reply memorandum in further support of their motions to dismiss the claims asserted against them in the Adversary Proceedings.[1]

**INTRODUCTION**

This Court should dismiss the current complaints in their entirety because Howrey has no property interest in the Pre-Dissolution matters or in the profits that Law Firm Defendants earned on those matters. The District Court's recent decision in *Heller Ehrman LLP v. Jones Day,* -- B.R.- -, 2014 WL 2609743 (N.D. Cal. June 11, 2014) ("*Heller*") and the New York Court of Appeals' decision in *In re Thelen LLP,* -- N.E.3d --, 2014 WL 2931526 (N.Y. Jul. 1, 2014) ("*Coudert*"), make clear that Howrey *never* owned any of its client matters - regardless of whether the matters left Howrey pre- or post-dissolution. Howrey had only an interest in fees for work that it actually performed. The same is true under D.C. law. The D.C. cases cited by the Trustee do not recognize a property interest in client matters. They are inapposite where, as here, a law firm's clients retain third-party firms to complete work that began at a law firm that subsequently dissolves. Furthermore, *Jewel* and related cases have been superseded by RUPA and, as both the New York Court of Appeals and Judge Breyer recognized, the Trustee's position – that law firms have a property interest in client matters – contravenes bedrock principles regarding the attorney-client relationship, client choice, and attorney mobility. Because the Trustee cannot identify any property interest in the Pre-Dissolution matters, each of his claims fails. D.C. is not an outlier and the Trustee has not met his heavy burden to show why that would be the case – particularly given that the relevant portion of D.C.'s, New York's and California's partnership laws are materially identical and meant to be interpreted uniformly.

The Trustee's new claims also fail for additional reasons. *First*, his §542 claims for accounting and turnover fail because this Court has dismissed substantively identical claims, and there is no justification for a different result here. In addition, because the Trustee has failed to

---

[1] All emphasis herein has been added unless otherwise noted. All capitalized terms have the meaning set forth in Defendants' opening brief. This reply will, for the sake of brevity, cite to Law Firm Defendants' Opening Brief.

1   plead any theory under which the profits at issue are the undisputed and liquidated "property" of

2   the estate, it cannot invoke § 542.

3          *Second*, the claim for accounting fails because, as the Trustee concedes, no Law Firm

4   Defendant ever owed a fiduciary duty to Howrey.  There is no basis to impose any fiduciary duty

5   allegedly owed by Howrey's former partners to Howrey upon Law Firm Defendants.  The New

6   York Court of Appeals soundly rejected the principal authority cited by the Trustee for this

7   proposition – the district court's decision in *Coudert*.  An accounting claim also cannot be based

8   solely on an alleged need for discovery from the defendant.

9          *Finally*, D.C. law allows a plaintiff to bring an unjust enrichment claim only if the *plaintiff*

10  conferred a benefit on the defendant.  Under the Trustee's own theory, however, any alleged

11  benefit was conferred on Law Firm Defendants by a third party, not by Howrey.  In addition, there

12  is nothing unjust about Defendants keeping the profits from the work that they performed.

13                                  <u>**ARGUMENT**</u>

14  I.     ***HELLER* AND *COUDERT* MAKE CLEAR THAT ALL THE TRUSTEE'S CLAIMS**
            **FAIL AS A MATTER OF LAW**
15

16         All of the Trustee's claims against Law Firm Defendants –  those arising from partners who

17  left both before and after Howrey dissolved – rest upon the allegation that Howrey had a property

18  interest in the matters on which Law Firm Defendants worked.  The District Court for the Northern

19  District of California's recent decision in *Heller* and the New York Court of Appeals' decision in

20  *Coudert*,[2] make clear, however, that law firms do not own their clients and have no property

21  interest in their client engagements.  Both decisions rest on commonly-accepted principles

22  governing the attorney-client relationship and lawyer mobility.

23         In *Heller*, the district court ruled that "[a] law firm never owns client matters."  *Heller*,

24  2014 WL 2609743, at *5.  "A client, for whatever reason, may summarily discharge counsel and

25  hire someone else," at which point the former counsel is entitled only to "fees . . . for services

26  _____

27  [2]  The New York Court of Appeals issued a single opinion addressing the identical certified questions arising from the
        Thelen and Coudert bankruptcy proceedings.

28

performed to the date of discharge." *Id.* at *1. Thus, "the most [a] law firm can be said to have is" a right to be paid for services that it actually performs, and "an *expectation* of future business." *Id.* at *6. That *expectation* "disappear[s] as soon as either (1) the client removes the business, which it can do at will, or (2) the law firm ceases to be able to perform the work [necessary] to generate [any] expected future profits." *Id.*

The New York Court of Appeals similarly held that "a client's legal matter belongs to the client, not the lawyer." *Coudert,* 2014 WL 2931526, at *5. Because clients have the 'unqualified right to terminate the attorney-client relationship at any time' without any obligation other than to compensate the attorney for 'the fair and reasonable value of the *completed services*,'" the court held that "no law firm has a property interest in future hourly legal fees." *Id.* ("New York Courts have never suggested that a law firm owns anything with respect to a client matter other than yet-unpaid compensation for legal services already provided.").

As discussed below, D.C. law is no different. Like the Heller and Coudert law firms, Howrey did not own the matters that clients previously entrusted to it, and it has no right to profits earned by Law Firm Defendants. That is true whether a partner left Howrey before or after it formally dissolved. *Heller*, 2014 WL 2609743, at *5. Howrey's expectation of future profits "disappear[ed]" when clients exercised their unfettered right to fire Howrey and retain one of Law Firm Defendants. *Id.* at *6. At that point, the profits at issue resulted from the business of a Law Firm Defendant, not Howrey's business, and Howrey had no right to profits from that other law firm's work. The Trustees's claims fail for the reasons stated in *Heller* and *Coudert*.[3]

## A.  The *Jewel* Doctrine Does Not Apply Here

Both Judge Breyer and the New York Court of Appeals held that *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984), and similar cases involving the so-called "unfinished business" doctrine are

---

[3] The *Heller* and *Coudert* decisions show that Defendants' motions to dismiss the original complaints should have been granted. Law Firm Defendants urge this Court to revisit that decision. Law Firm Defendants note that the Trustee's arguments in support of his post-dissolution claims relied heavily on the Heller and Brobeck bankruptcy court decisions, and the Southern District of New York's decision in the Coudert bankruptcy, all of which now have been found to be incorrect.

1    inapposite to the facts of *Heller* and *Coudert*.  D.C. cases involving the "unfinished business"

2    doctrine are likewise irrelevant here.

3            *First*, as Judge Breyer explained, the "essence" of *Jewel* was that "the departing partners

4    had appropriated work for themselves that could have been performed on behalf of the dissolved

5    firm."  *Heller*, 2014 WL 2609743 at *4.  In *Jewel*, the dissolved partnership split into two

6    identifiable successor firms consisting entirely of partners of the old firm, and each of the two

7    successor firms *could* have continued to represent clients on behalf of the former partnership.  *Id.*

8    By contrast, when Heller, like Howrey, dissolved, it "lacked the financial ability to continue

9    providing legal services to its clients."  This "le[ft] clients with ongoing matters no choice but to

10   seek new counsel and Heller Shareholders no choice but to seek new [law firms]."  *Id.*

11           Moreover, the work in Heller was performed by "pre-existing third-party firms that

12   provided substantively new representation, requiring significant resources, personnel, capital, and

13   services beyond the capacity of either Heller or its individual shareholders."  *Id.*  The post-

14   dissolution work in *Jewel*, by contrast, was performed entirely by a subset of the old firm.  *Jewel*,

15   156 Cal. App. 3d at 175.  This distinction is important, Judge Breyer explained, because *Jewel*'s

16   holding was premised on the fiduciary duties owed *among partners* of a dissolved firm.  *Heller*,

17   2014 WL 2609743 at *4; *see also Jewel*, 156 Cal. App. 3d at 178-79.  But, in *Heller* (like Howrey),

18   the shareholders dispersed broadly to third-party firms, which "never owed any duty, fiduciary or

19   otherwise, to the dissolved firm."  *Heller*, 2014 WL 2609743, at *4.  Thus, the district court held,

20   there is no basis for extending *Jewel* to work performed under "new retainer agreements" between

21   clients and "new firms."  *Id.* [4]

22           For similar reasons, the New York Court of Appeals likewise concluded that the so-called

23   unfinished business doctrine, "originally articulated and applied by the *Jewel* court," did not apply

24   in the context of Coudert's bankruptcy and liquidation.  *Coudert*, 2014 WL 2931526 at *4.  Indeed,

25   *Coudert* recognized that neither *Jewel* nor partnership law "defines what makes up the partnership

---

26

27   [4] Judge Breyer also observed that *Jewel* involved contingency matters, *Heller* – and this case – which involved only
     hourly-rate matters.  *See id.*  This distinction is significant because Heller, like Howrey, was "fully compensated" for
     the work it had performed.

28

property" that is subject to the state-law duty to account. *Id.* at *7; *see id.* at *4. Because "client matters are not partnership property" of a law firm, the duty to account simply does not apply. *Id.* at *5.

*Second*, *Jewel* interpreted UPA, while the Heller and Howrey partnerships were governed by RUPA. *See Heller*, 2014 WL 2609743 at *4. No published California cases decided under RUPA cite *Jewel* for its unfinished business holding. *Id.* at *5. To the contrary, Judge Breyer held that RUPA "undermines the legal foundation on which *Jewel* rests." *Id.* at *4. Under RUPA, the duty not to compete "does not extend to winding up the business," and partners are free to compete immediately upon dissolution or dissociation. § 404(b)(3) cmt. 2; *see also* § 603(b)(2). UPA, by contrast, "touche[d] only sparingly" on these duties and left further development to the common law. *See* RUPA § 404 cmt. 1 (citing UPA §§ 4(3) & 21). *Jewel*'s attempt to fill the void in UPA has been overtaken by RUPA: "[U]nlike in *Jewel*, if a former Heller Shareholder signed a new retainer agreement with a former Heller client, this would not violate the 'fiduciary duty not to take any action with respect to unfinished partnership business for personal gain.'" *Heller*, 2014 WL 2609743 at *4 (quoting *Jewel*, 156 Cal. App. 3d at 178-79). "Consequently there is no provision of the RUPA that gives the dissolved firm the right to demand an accounting for profits earned by its former partner under a new retainer agreement with a client," much less under a new retainer agreement between a client and a third-party firm. *Id.*

*Third*, like Heller and Coudert, Howrey "lacked the financial ability to continue providing legal services to its clients." *Id.*; *see* TAC at ¶¶ 54-107 (detailing Howrey's "inevitable" "financial downfall," which ensured that "the firm would not survive"). Also like *Heller* and *Coudert*, the profits at issue here were earned by pre-existing third-party firms under new hourly-rate retainer agreements between those firms and clients that fired Howrey. *See Heller*, 2014 WL 2609743 at *4. On these undisputed facts, as in *Heller* and *Coudert*, Law Firm Defendants cannot be said to have violated a (non-existent) fiduciary duty to Howrey by "appropriat[ing] work for [themselves] that could have been performed on behalf of the dissolved firm." *Heller*, 2014 WL 2609743 at *4.

*Fourth*, the Trustee's reliance on *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990), *Young v. Delaney*, 647 A.2d 784 (D.C. 1994), and *Robinson v. Nussbaum*, 11 F. Supp. 2d 1 (D.D.C. 1997) is

misplaced. *See* Chapter 11 Trustee's Consolidated Opposition to Defendants' Second Motion to Dismiss, ("Opp. II") at 8, 10. Each of those cases was decided under UPA and relied heavily on *Jewel*, which both *Heller* and *Coudert* found inapplicable to the facts presented here. No D.C. cases decided under RUPA involving either pre- or post-dissolution partner departures follow *Beckman*, *Young*, or *Robinson* for their "unfinished business" holdings. Moreover, in each of these three cases, as in *Jewel*, there was an identifiable successor firm, consisting entirely of partners from the dissolved firm, that continued to represent the dissolved firm's clients. *Beckman*, 579 A.2d at 625; *Young*, 647 A.2d at 787; *Robinson*, 11 F. Supp. 2d at 2. The work at issue was performed under the original retainer agreement between the client and the old firm, rather than under new agreements signed with a third-party firm. *See Beckman*, 579 A.2d at 636 & n.24; *see also Young*, 647 A.2d at 786-87; *Robinson*, 11 F. Supp. 2d at 2.[5]

*Finally*, because *Jewel* is not controlling here, there is no basis for extending its purported definition of "unfinished business" to include Pre-Dissolution matters. *Compare* Mem. Dec. at 20 (stating that "there is no reason to limit the definition of Howrey Unfinished Business to matters pending as of dissolution," because doing so is merely a logical extension of *Heller I, Heller II*, and *Jewel*). Indeed, in *Coudert*, the court stated that a claim based on departure of parties pre-dissolution "simply does not comport with our profession's traditions and the commercial realities of the practice of law today" *Coudert*, 2014 WL 2931526 at *9. As discussed above, a former partner is free to compete with the partnership immediately upon dissolution *or dissociation*, *see* D.C. Code § 33-106.03(b)(3), and RUPA does not provide "the [partner's former] firm the right to demand an accounting for profits earned by its former partner under a new retainer agreement with a client." *Heller*, 2014 WL 2609743, at *4. While a dissociated partner must still account for profits that he earns from his former firm's "partnership business," D.C. Code § 33-104.04(b)(1), the matters at issue ceased to be Howrey's "partnership business" when clients exercised their

---

[5] While the federal district court extended *Beckman* to the hourly fee context in *Robinson*, 11 F. Supp. 2d at 4, no D.C. court has ever cited *Robinson* for that proposition. In fact, in *Coudert*, the New York Court of Appeals said that intermediate New York appellate courts "occasionally referred to a contingency fee case as an 'asset' subject to distribution. But as [the Court of Appeals] stressed …[,] a former partner 'is only entitled to 'the value of his interest at the date of dissolution . . . with interest.'" *Coudert*, 2014 WL 2931526 at *5 (internal citations omitted).

DAVIS DEFENDANTS' JOINT REPLY
IN SUPPORT OF MOTION TO DISMISS

unfettered right to terminate Howrey and retain new counsel. *See Heller*, 2014 WL 2609743, at *6; *Coudert*, 2014 WL 2931526, at *5. *Heller* and *Coudert* establish that client matters, including those matters that Howrey's clients terminated prior to Howrey's dissolution, are not "partnership business" under any circumstance.

### B. **Equity and Public Policy Also Compel Dismissal**

Both Judge Breyer and the New York Court of Appeals concluded that equity and public policy considerations weigh strongly against a rule that forces third-party firms to turn over their profits to a dissolved firm that contributed nothing to performing the work at issue. The same is true here.

"A bedrock of the commercial legal profession is that lawyers expect to be paid for services they provide to their clients, and clients expect to pay the firm that employs the lawyers who provide their services." *Heller*, 2014 WL 2609743 at *5-7. Moreover, "[l]aw firms accepting a new client, even for an hourly-fee matter, must be prepared to invest considerable resources: attorney salaries; malpractice insurance; administrative support; research fees; document preparation; space allocation; opportunity costs; and so on." *Id.* at *7. In light of these substantial investments, "[n]o firm can be expected to contribute those resources if they are not entitled to retain the corresponding profits." *Id.* A "rule that prevents third-party firms from earning a profit off of labor and capital investment they make in a matter previously handled by a dissolved firm" would "discourage third-party firms" from accepting such matters and taking on former partners of a dissolved firm in the first place. *Id.* That "is not in the public interest." *Id.* Indeed, "the [Trustee's] theory simply does not comport with [the legal] profession's traditions and the commercial realities of the practice of law today." *Coudert*, 2014 WL 2931526 at *9.

Contrary to this Court's analysis, these equitable and policy considerations require dismissal of the TAC. *Compare* Mem Dec. at 16 ("[A]s this court held in *Heller* II, the right of a client to choose its lawyers is not implicated here."); *id.* at 17 (concluding that the Trustee's position would not impede attorney mobility). The Trustee seeks profits earned by Law Firm Defendants for work that they performed with no contribution whatsoever from Howrey. In addition to creating an "unjust windfall" for dissolving firms, *Coudert*, 2014 WL 2931526 at *7,

the Trustee's position would "make it more difficult for partners leaving a struggling a firm to find new employment" and "limit the representation choices a client has available," *Heller*, 2014 WL 2609743 at \*7. "The notion that law firms will hire departing partners or accept client engagements without a promise of compensation ignores commonsense and marketplace realities." *Coudert*, 2014 WL 2931526 at \*8.

Furthermore, just as *Jewel* did not grapple with these policy implications, *see Heller*, 2014 WL 2609743 at \*5-7, neither did *Beckman*, *Young*, or *Robinson*. *Beckman* noted in passing that "[t]he duty to wind up partnership business does not disable the former partners in a law firm from accepting employment from former clients of the dissolved partnership" on *new* matters, 579 A.2d at 638. But it said nothing about the implications for a client's choice of counsel on *pending* matters (nor did it address any other policy consequence of its holding, such as the effect on lawyer mobility). As Judge Breyer explained, "the Trustee's position would all but force former Heller clients"—abandoned by a law firm that could no longer serve them—"to retain new counsel with no connection to Heller or their [pending] matters." *Heller*, 2014 WL 2609743 at \*7 n.10. "Followed to its logical conclusion, the [Trustee's] approach would cause clients, lawyers, and law firms to suffer …." *Coudert*, 2014 WL 2931526 at \*8.

### C. The Trustee's Attempts to Evade *Heller* Are Unavailing

The Trustee's attempts to distinguish Judge Breyer's decision are meritless.

*First*, the Trustee argues that a district court's decision does not bind this Court. (Opp. II at 6.) Whether or not that is true,[6] it is beside the point because this Court has relied on its *Heller* decisions at every turn in this case. *Howrey I* at 5 n.6, 6, 13, 14, 15, 16, 20, 22, 23, 25-26. Against this backdrop, the Trustee cannot credibly argue that *Heller* "does not affect" these proceedings.

---

[6] Federal courts are split on this issue. *See, e.g., In re Romano*, 350 B.R. 276 (Bankr. E.D. La. 2005). Neither the Ninth Circuit nor the Northern District of California has squarely addressed the question. *See State Compensation Ins. Fund v. Zamora* (*In re Silverman*), 616 F.3d 1001, 1005 & n.2 (9th Cir. 2010) (holding that district court decisions do not bind bankruptcy courts outside the district, and noting that "[t]his case does not present the question whether bankruptcy courts are bound by all the decisions of all the district judges within the district where the bankruptcy court sits"); *see also In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 747 (Bankr. D. Ariz. 2010) (describing question as "unsettled"). *But see Life Ins. Co. of Va. v. Barakat* (*In re Barakat*), 173 B.R. 672, 678-679 (Bankr. C.D. Cal. 1994) (district court decisions do not bind bankruptcy court in same district); *In re Hill*, 440 B.R. 176, 180 (Bankr. S.D. Cal. 2010) (same).

(Opp. II at 5.)  The district court's reversal of the very decision on which this Court based its earlier ruling herein provides substantial grounds for the Court to revisit previous questions.  *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (courts have discretion to depart from law of the case where "the first decision was clearly erroneous" or "an intervening change in the law has occurred").

*Second*, the Trustee's attempt to distinguish *Heller* as limited to California law is equally fruitless (Opp. II at 6-7) because the questions in this case do not hinge on the peculiarities D.C. law.  Rather, as both Judge Breyer and the New York Court of Appeals recognized, unfinished business claims implicate core principles such as ownership of client matters, the attorney-client relationship, attorney mobility, and clients' right to choose counsel.  *See Heller*, 2014 WL 2609743 at *5-7; *Coudert*, 2014 WL 2931526 at *5, 7-9.  These bedrock principles are commonly accepted, including in D.C.  *See, e.g.*, *In re Robert W. Mance, III*, 980 A.2d 1196, 1202-04 (D.C. 2009) (clients have an "unfettered right to discharge an attorney," and attorneys can "earn[] fees only by conferring a benefit on or performing a legal service for the client" (internal quotation marks omitted)); *Neuman v. Akman*, 715 A.2d 127, 130-31 (D.C. 1998) (stressing the importance of protecting client choice).

*Third*, the Trustee accuses the district court of ignoring decisions from other courts that have "analyzed *Jewel* and applied the Unfinished Business Rule to a law firm's hourly fee matters."  (Opp. II at 10.)  But, like *Jewel*, the decisions that the Trustee cites are irrelevant because (i) they were decided under UPA, not RUPA; and/or (ii) they did not involve claims against a third-party firm for profits from matters that a dissolving firm abandoned.  The only exceptions— *Brobeck* and the district court's decision in *Coudert*—are no longer good law.

*Fourth*, the Trustee argues that the so-called unfinished business doctrine is "merely" a default rule that "[l]awyers can . . . contract around."  (Opp. II at 10.)  The *Coudert* decision unequivocally rejected this same argument, finding that the default rule created a "deficiency…beyond the capacity of a *Jewel* waiver to cure."  *Coudert*, 2014 WL 2931526 at *9. Moreover, default rules are fashioned to provide an equitable or efficient arrangement for the vast majority of cases, in the absence of an express agreement.  R. Epstein, *In Defense of the Contract*

1   *at Will*, 51 U. Chi. L. Rev. 947, 951 (1984) ("The rule of construction is normally chosen because

2   it reflects the dominant practice in a given class of cases and because that practice is itself regarded

3   as making good sense for the standard transactions it governs.").  A default rule that, if applied to

4   hourly rate matters, parties must routinely modify to comport with public policy and preserve client

5   choice contravenes the very purpose of default rules.

6        *Fifth*, the Trustee proposes that the typical default scenario involves the departure of a

7   partner from a small law firm who is followed by a significant firm client to his new practice.

8   (Opp. II at 11-12.)  The Trustee suggests that the remaining partners' lives will be "ruined" as they

9   "scramble to satisfy" the partnership's debts, and that such a result "cannot be reconciled with the

10  purpose of a partnership." (Opp. II at 12.)  RUPA, however, expressly permits a partner to

11  "dissociate at any time, rightfully or wrongfully, by express will." § 602(a); *see also* Bromberg &

12  Ribstein on Partnership § 7.01[D][1] (2d ed. 2014) ("Because a partnership is a consensual

13  relation, an individual partner should have the right and power to dissociate if not in contravention

14  of the partnership agreement.").  RUPA also permits the dissociating partner to compete with the

15  partnership "immediately" and "without any further consent." § 603(b)(2) & cmt. 2; *see*

16  § 404(b)(3) cmt. 2.  Whether the firm in question is large or small, there is nothing unfair about a

17  partner's statutorily authorized choice to withdraw, or the client's right to terminate the old

18  partnership and hire the former partner's new firm.

19       *Sixth*, the Trustee asserts that his proposed rule has not yet produced any ill effects (Opp. II

20  at 10), but that is because no appellate court has ever adopted his novel and erroneous theory.

21  Indeed, before *Brobeck* in 2008, no court had imposed liability on third-party firms for profits

22  earned from their own work. *Brobeck* was never reviewed on appeal, and – as the decision by

23  Judge Breyer and the New York Court of Appeals demonstrate – it was wrongly decided.

24       *Seventh*, the Trustee claims that "no lawyer has been forced to work for free" because "at

25  worst, the lawyers would work at cost." (Opp. II at 13.)  For lawyers, whose "stock in trade" is

26  "time and advice," *United States v. Bertoli*, 994 F.2d 1002, 1023 (3d Cir. 1993), working at cost is

27  working for free.  The Trustee argues that it is no "travesty" to work on "one matter" for a "short

28  time," (Opp. II at 13) but the Trustee seeks to recover profits from Law Firm Defendants earned on

- 10 -

many matters, and the reality is that "[l]egal matters have a way of dragging on," *Heller*, 2014 WL 2609743 at *6, for years or even decades. Neither is it any consolation that the lawyers might secure future business from clients (Opp. II at 13), because future business is never a guarantee, and many clients do not even have recurring legal needs. Although lawyers sometimes *choose* to provide free or discounted services to clients for various reasons, D.C. law does not *force* third-party firms to bear that burden. (*See id.*)

*Finally*, a law firm's expectation of being paid for its work does not mean that "a lawyer's effort for his client [i]s dependent on how much profit the client generates for the lawyer's firm." (Opp. II at 13.) People, including lawyers, need to make a living. *See Heller*, 2014 WL 2609743, at *7. ("[l]aw firms accepting a new client, even for an hourly-fee matter, must be prepared to invest considerable resources…."). In light of these substantial investments, "[n]o firm can be expected to contribute those resources if they are not entitled to retain the corresponding profits." *Id.* Thus, although the Trustee claims that its position has no effect on client choice (Opp. II at 13), "[t]he notion that law firms will hire departing partners or accept client engagements without the promise of compensation ignores commonsense and marketplace realities," *Coudert*, 2014 WL 2931526 at *8.

## II.    THE TRUSTEE'S 11 U.S.C. § 542 CLAIMS FAIL AS A MATTER OF LAW

The Trustee cannot escape this Court's prior ruling that "when partners left Debtor prior to dissolution, taking Howrey Unfinished Business with them, that business itself and any profits to be realized on it was no longer property of Debtor." Mem. Dec. at 20. The Trustee tries to circumvent the Court's conclusion by arguing that (i) the Court left open the possibility that the Trustee could proceed on an accounting theory, and (ii) Judge McMahon's decision in *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 480 B.R. 145 (S.D.N.Y 2012) (the "2012 *Coudert* district court opinion") permitted accounting claims. On the first point, this Court's grant of permission to the Trustee to amend his complaint and attempt to set forth a cause of action based on an accounting theory was not a finding that the Trustee had a legally viable cause of action or that any such attempt would not dismissed for failure to state a claim. On the second point, Judge McMahon's conclusion was premised on her incorrect belief that law firms own their

Case: 13-03095    Doc# 98    Filed: 07/16/14    Entered: 07/16/14 20:52:39    Page 18 of 28

1   clients and client matters, and that premise now has been rejected unanimously by the New York

2   State Court of Appeals.  *See Coudert*, 2014 WL 2931526 at * 1.  Neither of the Trustee's

3   arguments overcome this Court's "law of the case."  *See U.S. v. Alexander*, 106 F.3d 874, 876 (9th

4   Cir. 1997).

5          The Trustee's next argument, that the TAC "identifies property recoverable under Section

6   542," also fails.  First, the Trustee does not meaningfully address the well-settled point of law

7   raised by Law Firm Defendants that actions pursuant to § 542 are only appropriate where the

8   debtor's entitlement to the property at issue is not subject to legitimate dispute.  Law Firm

9   Defendants' Opening Brief at 10-11.)  Rather, the Trustee argues only that he "relies upon well-

10  established D.C. partnership law to create the property interest" that is the subject of the instant

11  dispute.  (Opp. II at 18 n.7) (citing D.C. code §§ 33-104.04 and 33-106.03.)  The D.C. partnership

12  law upon which the Trustee relies, just like New York's partnership law, "does not define property;

13  rather, it supplies default rules for how a partnership upon dissolution divides property as

14  elsewhere defined in state law."  *See Coudert*, 2014 WL 2931526, at *4.  Additionally, the

15  Trustee's arguments do not extinguish the *bona fide* dispute over whether Howrey had a property

16  interest in clients and client matters, including those matters that Howrey was no longer handling at

17  the time of its dissolution.  Moreover, the legitimacy of that dispute has been confirmed by the

18  recent decisions in *Coudert* and *Heller*.  *See id.*; *Heller*, 2014 WL 2609743, at *2.

19         Second, the Trustee cannot meet his burden by claiming that he has "identifie[d]" alleged

20  property in the TAC.  The impropriety of bringing a § 542 claim to adjudicate a dispute over

21  ownership is not a pleading issue.  No matter what the Trustee pleads with respect to the alleged

22  property interest, that interest is disputed and, thus, not the proper subject of a § 542 claim.  *See*

23  *Heller Ehrman v. Gregory Canyon, Ltd. (In re Heller Ehrman)*, 461 B.R. 606, 607-08 (Bankr. N.D.

24  Cal. 2011) (quoting *In re Gurga*, 176 B.R. 196, 199-200 (B.A.P. 9th Cir. 1994)).

25         Finally, the Trustee argues that the alleged property at issue is "cash" and thus the Trustee

26  may use it pursuant to § 363.  This is nothing but misdirection.  The Trustee seeks to recover

27  *profits* derived from *partnership property*.  It is true that the profits themselves are "cash," but the

28  Trustee must first identify some undisputed "partnership property" from which the profits were

Case: 13-03095   Doc# 98   Filed: 07/16/14   Entered: 07/16/14 20:52:39   Page 19 of
28

derived. He cannot do so. *See supra* Section I (law firms do not own client matters); *Heller,* 2014 WL 2609743, at *1 (same); *Coudert,* 2014 WL 2931526, at *5 (same). Additionally, even if Howrey's clients and the client matters were partnership property, the Trustee never assumed those client engagements, nor could he. Accordingly, the Trustee could not use, sell or lease the clients and client matters. (*See* Opp. II at 12-13.) The Trustee has no response to this flaw, which is fatal to his § 542 claim.

## III. THE TRUSTEE'S EQUITABLE ACCOUNTING CLAIM SHOULD BE DISMISSED

The Trustee's equitable accounting claims fail for the same fundamental reason that his other claims fail: a client's matters belong to the client, not the lawyer or law firm. *Heller,* 2014 WL 2609743, at *1. The equitable accounting claim, like the Trustee's other claims, is premised on Howrey's alleged property interest in the profits at issue. Once the client fires a firm and hires new counsel (either prior to or after dissolution), however, the old firm's interest in the client's hourly rate matters is limited to the work it performed. The hourly rate matters are not the old firm's unfinished business and therefore are not subject to a duty to account. *See Coudert,* 2014 WL 2931526, at *9.

Ignoring this fundamental problem, the Trustee misguidedly attempts to predicate an accounting claim against Law Firm Defendants on a former partner's alleged duty to account under D.C. Code §§ 33-104.04(b)(1) and 106.03(b)(3). That argument rests primarily on Judge McMahon's conclusion in the 2012 *Coudert* district court opinion that because completion of client matters is "within the scope of the business of the Firms [the former partners] joined … [those] … Firms are jointly liable for an accounting." 2012 *Coudert* district court opinion*,* 480 B.R. at 178.[7] Judge McMahon cited no authority in support of this conclusion and, indeed, no authority exists.

---

[7] The New York Court of Appeals accepted certification of the following question from the Second Circuit in the appeal from 2012 *Coudert* district court opinion (along with the same question certified in the *Thelen* case, *In re Thelen, LLP (Geron v. Seyfarth Shaw LLP)*, 736 F.3d 213, 225 (2d Cir. 2013): "Under New York Law, is a client matter that is billed on an hourly basis the property of a law firm, such that upon dissolution and in related bankruptcy proceedings, the law firm is entitled to profits earned on such matters as the 'unfinished business' of the firm.*"* On July 1, 2014, the Court of Appeals rendered its opinion answering that question "in the negative." *Coudert*, 2014 WL 2931526 at *9. Thus, whatever paper thin support the 2012 *Coudert* district court opinion lent to the Trustee's arguments here is now gone.

Case: 13-03095    Doc# 98    Filed: 07/16/14    Entered: 07/16/14 20:42:39    Page 20 of 28

A former partner's duty to account under UPA does not transmogrify into a duty on the part of her new firm to account simply because the new firm was retained by the client after it terminated the former firm. Nothing in the RUPA – or elsewhere in the annals of partnership jurisprudence – makes a separate third-party liable for fiduciary duties that a new partner might owe to her former firm. *See Heller*, 2014 WL 2609743, at *4 ("the third-party firms never owed any duty, fiduciary or otherwise, to the dissolved firm").

None of the other cases cited by the Trustee support his attempt to cobble together a claim against the Law Firm Defendants based on the former Howrey partners' limited fiduciary duties. *Robinson,* 11 F. Supp. 2d 1, involved claims for a post-dissolution accounting by one former partner against several of his former partners – not against a pre-existing and entirely separate law firm. *Convit v. Wilson*, 980 A. 2d 1104 (D. D.C. 2009), was a medical malpractice action against a treating physician and his medical practice employer – the case had nothing to do with using traditional theories of vicarious liability to hold third-party firms responsible for fiduciary obligations that may have been owed by new partners to their old firms. *Avianca, Inc. v. Corriea*, 1992 U.S. Dist. LEXIS 4709 (D. D.C. Apr. 13, 1992), involved a fraud claim against a law firm and one of its attorneys for actions undertaken by the attorney while employed by the firm. It too has nothing to do with attempting to predicate claims against a firm on one of its partner's alleged fiduciary duties to his prior firm.

Not surprisingly, in many of the cases relied upon by the Trustee, the basis of the plaintiff's claim for an equitable accounting was, in fact, a fiduciary or contractual relationship between the plaintiff *and the defendant*. *Cobell v. Babbitt*, 30 F. Supp 2d 24, 41 (D. D.C. 1988), was a class action in which the plaintiffs sought i) a declaratory judgment that the defendants had "breached their trust [i.e., fiduciary] duties" and ii) a decree "ordering the defendants to properly account for the money that already sits in the trust fund to which the plaintiffs are beneficiaries." *Warren v. Chapman*, 535 A. 2d 856 (D.C. Cir. 1987), involved claims for an accounting brought by one partner of a dissolved partnership against another former partner where the former partner owed fiduciary duties under partnership law. *Rosenak v. Poller*, 290 F.2d 748 (D.C. Cir. 1961), was a lawsuit for an "accounting under a contract," brought by the appellant who sold his stock in a

Case: 13-03095   Doc# 98   Filed: 07/16/14   Entered: 07/16/14 20:52:29   Page 21 of 28

company to the appellee "prior to the final accounting of the dissolution" of the company for a set amount, plus a "share of the net proceeds after complete dissolution of [the company's] assets." Finally, in *Bates v. Northwestern Human Services, Inc.*, 466 F. Supp 2d 69, 102 (D. D.C. 2006), the court defined an accounting as "a detailed statement of the debits and credits between parties arising out of a contract or fiduciary relation[ship]," and specifically noted that the defendants there were holding monies they had received in their capacities as fiduciaries for plaintiffs.

Indeed, the cases cited in Law Firm Defendants' Opening Brief uniformly hold that an action for an equitable accounting seeking affirmative relief must be based on the existence of a fiduciary or contractual relationship between the plaintiff and the entity from which the accounting is sought. The Trustee does not distinguish any of these cases. Moreover, recent case law (decided after the filing of Law Firm Defendants' Opening Brief) further underscores that an accounting claims fails if there is no fiduciary relationship between the parties. In *Haynes v. Navy Fed. Credit Union*, -- F. Supp. 2d --, 2014 WL 2591371 (D.D.C. Jun. 10, 2014), the plaintiff sought an accounting from his mortgage company for allegedly misapplied escrow payments. Although it was unclear whether the plaintiff was bringing "a legal claim for what has historically been referred to as an 'action of account'" or whether he was seeking "an accounting in equity," the court held that both claims failed because the defendant had no fiduciary duty to the plaintiff. *Id.* at *6-7. It explained that an action of account, to whatever extent it remains viable today, "'lies where one has received goods or money for another *in a fiduciary capacity*'" and "'can only be maintained where there is such a relationship between the parties.'" *Id.* (quoting Black's Law Dictionary (9th ed. 2009) (emphasis added); *id.* at *7 (describing the action as "almost obsolete"). Here, there is no such relationship, and the Trustee's claims for an accounting should be dismissed.

## IV. THE TRUSTEE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

### A. Law Firm Defendants Have Not Received Any Howrey Property or Benefit

"The fundamental characteristic of unjust enrichment is that the defendant has been unjustly enriched by receiving *something that properly belongs to the plaintiff*, thereby forcing restoration to the plaintiff." *Rapaport v. U.S. Dept. of Treasury, Office of Thrift Supervision,* 59 F.3d 212, 217 (D.C. Cir. 1995). As discussed above, the Trustee never addresses Law Firm Defendants'

contention that the TAC fails to plead that Law Firm Defendants ever possessed any property or benefit that once belonged to Howrey. The only allegation about a benefit received by Law Firm Defendants remains the same as in the complaint this Court already dismissed – that Law Firm Defendants were paid for legal services that they were retained to provide prior to Howrey's dissolution, on matters that had been handled by Howrey. *See* TAC ¶ 183, 186. The Trustee's Opposition, however, does not (and cannot) show that Howrey has any property interest in or right to the Pre-Dissolution Matters or to compensation for work Law Firm Defendants did on those matters – work that Howrey could not perform. This is because "[a] law firm does not own a client or an engagement, and is only entitled to be paid for services actually rendered." *Coudert*, 2014 WL 2931526 at *1; *see also Heller*, 2014 WL 2609743, at *2, Section I *supra* (discussing Heller and *Coudert*); *In re Robert W. Mance, III*, 980 A.2d at 1203; Law Firm Defendants' Opening Brief at pp. 6-7 (discussing In re Robert W. *Mance*, III). Having failed to show that the "defendant[s] ha[ve] been unjustly enriched by receiving something that *properly belongs to the plaintiff*," the Trustee's claim for unjust enrichment against Law Firm Defendants fails.

The Trustee's argument that D.C. law supports an indirect benefit theory of unjust enrichment is not supported by the authorities on which he relies. In *In re Lorazepam & Clorasepate Antitrust Litig.*, 295 F. Supp. 2d 30, 33 (D.D.C. 2003), the plaintiffs, insurance companies, who made out-of-pocket payments to their insureds that were allegedly inflated as a result of an antitrust conspiracy by defendants, did not bring their claims under D.C. law. Moreover, in deciding the unjust enrichment claim, the court actually relied on an Illinois case to support the indirect benefit theory.[8] *See id*. at 51 (citing *State Farm Gen. Ins. Co. v. Stewart*, 681 N.E.2d 625, 633 (Ill. App. Ct 1997), for the proposition that a plaintiff alleging unjust enrichment

---

[8] Illinois, unlike D.C., has recognized unjust enrichment claims where the benefit "was transferred to the defendant by a third party." *State Farm Gen. Ins. Co. v. Stewart*, 681 N.E.2d 625, 633 (Ill. App. Ct 1997); *see also RBS Citzens, N.A. v. Bentley Motors, Inc.* No. 10 C 2929, 2012 WL 1565457, at *3 (N.D. Ill., May 2, 2012).

LAW FIRM DEFENDANTS' JOINT REPLY
IN SUPPORT OF MOTION TO DISMISS

may seek to recover a benefit which he gave directly to the defendant or one which was transferred to the defendant by a third party).[9]

In *Bates,* 466 F. Supp. 2d 69, 73-74, the defendants were plaintiffs' fiduciaries, appointed to serve as plaintiffs' representative payees and to use the federal payments that they received for the plaintiffs' use and benefit.  In that situation, the defendants' retention of "a payment owed to the plaintiffs by the federal government and administered through the defendants in their capacity as the plaintiffs' fiduciary …constitute[d] a benefit 'conferred upon the defendants by the plaintiffs.'"  *Id*. at 102.  By contrast, in the instant case, the Former Howrey Clients did not expect, require, or intend that their payments to Law Firms Defendants be turned over to Howrey.  The Trustee does not and cannot allege that Law Firm Defendants were fiduciaries for Howrey.

Section 48 of the Restatement (Third) of Restitution and Unjust Enrichment similarly fails to provide the Trustee with any support for his indirect theory.  First, as the Trustee concedes, no D.C. court has adopted this provision of the Restatement.  Opp II. at 33.  Further, even if D.C. recognized § 48 of the Restatement, the Trustee's claim still fails: Howrey would be entitled to the profits only where Howrey "ha[d] better legal or equitable right" to them.  Here, however, as discussed in Section I,  neither Howrey nor the Trustee have a better claim to any such profits, given that "lawyers expect to be paid for the services they provide to clients," *Heller*, 2014 WL 2609743 at *5, and "allowing former partners of a dissolved firm to profit from work they do not perform…creates an unjust windfall. " *Coudert,* 2014 WL 2931526, at *7; *see also* Section I, *supra*.

---

[9] Further, the factual circumstances present in *In re Lorazepam* suggest that even when third parties indirectly transfer a benefit to the defendant, plaintiff's actions must directly confer a benefit as well.  In *In re Lorazepam*, the defendants' alleged monopolistic activity was claimed to have resulted in price increases of certain drugs.  This price increase was absorbed by plaintiff insurance companies, not the third party insureds who were prescribed these drugs, because even though the insureds' were technically charged the inflated prices of these drugs, their copays remained the same. 295 F. Supp. 2d at 5.  As a result, the court found that the plaintiffs stated a claim for unjust enrichment where it was the plaintiffs that conferred a benefit on the defendants. There, the defendants derived a benefit from the insurance companies' overpayment  for the drugs (in absorbing the difference of the inflated price and the copay).  *Id*.  Although the third-party insureds indirectly conferred a benefit, they took no actions that directly conferred a benefit on defendants. Here, the facts are completely different.  Howrey did not to confer any benefit on Law Firm Defendants.  The alleged benefit came from third-parties, *i.e.*, the clients, who conferred a benefit on Law Firm Defendants when they hired Law Firm Defendants to represent them and then paid the Law Firm Defendants for work they performed.

**B.** **Law Firm Defendants' Retention of the Profits From Their Work is Not Unjust or Inequitable**

The Trustee argues that he is not required to prove fault on the part of Law Firm Defendants to state a claim for unjust enrichment, but the very case he cites for that proposition also provides that where a defendant innocently receives the benefit, the retention of that benefit must be *unjust. See Qatar Nat'l Bank v. Winmar, Inc.*, 650 F. Supp. 2d 1, 8 (D.D.C. 2009). This means that even if the Trustee is not required to prove fault, he must nevertheless show that Law Firm Defendants' retention of the alleged benefit – the profits from the Law Firm Defendants' work – is unjust.

Of course, as set forth at length in Law Firm Defendants' Opening Brief, and as explained in *Heller* and *Coudert,* their retention of monies earned from work they performed is not in any way unjust. *See* Law Firm Defendants' Opening Brief at 21-22; *Heller*, 2014 WL 2609743 at *5; *Coudert,* 2014 WL 2931526, at *7. In fact, it is just the opposite. There is nothing unjust or improper about Law Firm Defendants hiring ex-partners of Howrey. There is also nothing unjust or improper about ex-clients of Howrey hiring new counsel. Similarly, there is nothing unjust about Law Firm Defendants retaining the profits from their work on hourly rate matters, while Howrey retains any profits from the work it performed on those matters. In other words, "[b]alancing the equities, it is simple enough to conclude that the firm that did the work should keep the fees." *Heller,* 2014 WL 2609743, at *5.[10] This is especially true where, as here, Law Firm Defendants worked and were paid according to the terms of new engagement letters signed by the clients. In fact, it would be unjust to permit Howrey to profit from work that it did not perform. *See Coudert,* 2014 WL 2931526, at *8 ("By allowing former partners of a dissolved firm to profit from work they do not perform, all at the expense of a former partner and his new firm, the trustee's approach create an unjust windfall.") (internal quotations omitted). Equity demands that Law Firm Defendants be permitted to keep the money earned from legal work they performed.

---

[10] Section 48 of the Restatement does not change this result. The equities still favor Law Firm Defendants because they did the work and are entitled to the profits.

Case: 13-03095    Doc# 98    Filed: 07/16/14    Entered: 07/16/14 20:52:39    Page 25 of 28

The fact that the matters in question were once handled by Howrey cannot change this fundamental

principle. [11]

## <u>CONCLUSION</u>

For the foregoing reasons, Law Firm Defendants respectfully request that pursuant to FRBP

7012 and FRCP 12(b)(6), the Court dismiss without leave to amend, the complaints in each of the

Adversary Proceedings that are based on the hiring of Howrey partners who left prior to Howrey's

dissolution, and grant such other and further relief as may be just and proper.


Dated: July 16, 2014                                ARNOLD & PORTER LLP
                                                    Adv. Proc. No. 13-03094




                                                    By _____/s/ Pamela Phillips_____
                                                        Pamela Phillips

                                                    Attorneys for Defendant HOGAN LOVELLS
                                                    US LLP

---

[11] D.C. law requires dismissal of the complaints, but if the Court does not dismiss them, then it should exercise its discretion to abstain from deciding the questions at issue here, which involve "purely state law issues." *In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 570 (Bankr. N.D. Cal. 2002); *see also* 28 U.S.C. § 1334(c)(1).

Contrary to the Trustee's argument (Opp. II at 28), this Court has discretion to abstain even if no state court action is pending. "[A] parallel proceeding in state court" is a prerequisite for abstention only when an action was removed to federal court and consequently presents questions regarding "the interrelationship between" the federal removal and abstention statutes, 28 U.S.C. §§ 1334(c) and § 1452(b)." *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997); *In re Lazar*, 237 F.3d 967, 982 n.17 (9th Cir. 2001) (citing *Security Farms*, 124 F.3d at 1010 ("To require a pendant state action as a condition of abstention eliminates any confusion with 28 U.S.C. § 1452(b)....")). Where, as here, the proceeding was not removed from state court in the first place, there is no tension between §§ 1334(c) and 1452(b) and "[a]bstention is not barred merely because there is no pending state-court proceeding." *In re Hatfield*, Adv. P. No. 08-3140, 2009 WL 2849538, at *2 (Bankr. N.D. Cal. Jul. 17, 2009).

- 19 -

LAW FIRM DEFENDANTS' JOINT REPLY
IN SUPPORT OF MOTION TO DISMISS

| | |
|---|---|
| Dated:  July 16, 2014 | KASOWITZ, BENSON, TORRES & FRIEDMAN LLP<br>*Pro Se Litigant*<br>Adversary Proceeding No. 13-03060 |
| | By ____/s/ Margaret A. Ziemianek<br>        Margaret A. Ziemianek<br>        Robert M. Novick |
| Dated:  July 16, 2014 | HANSON BRIDGETT LLP<br>Adv. Proc. No. 13-03057 |
| | By___/s/ Nancy J. Newman<br>        Nancy J. Newman<br><br>Attorneys for Defendant NEAL, GERBER & EISENBERG LLP |
| Dated:  July 16, 2014 | PERKINS COIE LLP<br>*Pro Se Litigant*<br>Adv. Proc. No. 14-03032 |
| | By ____/s/ Judith B. Gitterman<br>        Judith B. Gitterman |
| Dated:  July 16, 2014 | PILLSBURY WINTHROP SHAW PITTMAN LLP<br>*Pro Se Litigant*<br>Adv. Proc. No. 13-03093 |
| | By___/s/ G. Allen Brandt<br>        David G. Keyko (*pro hac vice*)<br>        John M. Grenfell<br>        G. Allen Brandt |

- 20 -

DEFENDANTS' JOINT REPLY
IN SUPPORT OF MOTION TO DISMISS

| | |
|---|---|
| 1 | Dated:  July 16, 2014 |
| 2 | |
| 3 | |
| 4 | |
| 5 | Dated:  July 16, 2014 |

1   Dated:  July 16, 2014              SEYFARTH SHAW LLP
                                       *Pro Se Litigant*
2                                      Adv. Proc. No. 13-03254

3                                      By___/s/ Lori L. Roeser
4                                           Lori L. Roeser

5   Dated:  July 16, 2014              SHEPPARD MULLIN RICHTER &
                                       HAMPTON LLP
6                                      *Pro Se Litigant*
                                       Adv. Proc. No. 13-03062
7
8                                      By _/s/ Richard W. Brunette
                                            Richard W. Brunette
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 -

DEFENDANTS' JOINT REPLY
IN SUPPORT OF MOTION TO DISMISS